IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LCI HOLDING COMPANY, INC., *et al.*, | ) | Case No. 12-13319(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re Dkt No. 7** |

## MEMORANDUM OPINION

The Debtors filed for bankruptcy on December 11, 2012. Among the initial filings was a Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 507(a), 1107(a) and 1108 and Fed. R. Bankr. P. 6003, Authorizing Debtors To, *Inter Alia*, Pay Prepetion Wages, Compensation and Employee Benefits (D.I. 7) (the "Motion"). The Debtors are seeking authority through the Motion, *inter alia*, to pay bonuses offered in two plans to certain eligible employees[1].

### The Plans

The two plans are the Hospital Leadership Bonus Plan (the "HL Plan") and the Support Center Leadership Bonus Plan (the "SCL Plan") (collectively "the Plans"). The requested payments include both pre-petition and post-petition time periods. The HL Plan provides quarterly payments to its participants, while the SCL Plan is an annual payment.

The HL Plan rewards eligible participants if a participant hospital meets an EBITDAM target. The SCL Plan rewards members of the corporate leadership team, including four insiders, as defined in 11 U.S.C. § 101(31), if Debtors meet EBITDA targets. No HL Plan participant is an insider.

---

[1] The bonus plans discussed within are the only portion of the Motion being contested and, accordingly, are the aspect of the Motion which the Court is addressing.

The HL Plan and the SCL Plan have been in effect since at least 2006. Debtors modified the Plans prior to the bankruptcy filing to make them achievable and thereby realistically incentivizing.

The factual support for the bonuses is contained in the following declarations which the Court admitted into evidence without objection:

(1) Declaration of Phillip B. Douglas in Support of Chapter 11 Petitions and First Day Pleadings (D.I. 13);

(2) Declaration of Philip B. Douglas in Support of the Motion (the "Second Douglas Declaration") (D.I. 499).

(3) Declaration of Neil Augustine in Support of the Motion (the "Augustine Declaration") (D.I. 500); and

In particular, the Augustine Declaration and the Second Douglas Declaration explain the methodology of the Plans, how they are true incentive plans and why the Court must and does find that the Plans are long established and in the ordinary course.

Discussion

The Office of the United States Trustee (the "UST") objected to the Motion on several grounds and the Court conducted an evidentiary hearing on March 12, 2013 (the "Hearing"). In sum, if the UST prevails, the HL Plan participants will receive 20/81 of their bonus. The SCL Plan participants will receive 20/365 of their earned bonus.

The factual record from the hearing led the Court to conclude that the Debtors satisfied the requirement of 11 U.S.C. § 503(c) and the relief sought in the Motion is appropriate. The Plans are performance based, not retention based, and are ordinary course plans (in existence years before the bankruptcy). *In re Global Home Products, Inc.*, 369 B.R. 778, 786 (Bankr. D. Del. 2007); *In re Roth*

*AM., Inc.* 975 F.3d 949, 952 (3d Cir. 1992). Debtors have appropriately exercised their business judgment. *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787 (Bankr. D. Del. 2007).

At the conclusion of the Hearing, the UST withdrew all objections except the argument that any payments attributable to the pre-petition portion of the relevant time period were impermissible as violative of the holding in *In re Hechinger Investment Company of Delaware*, 298 F.3d 219 (3d Cir. 2002). The UST argues that most of the payments under the Plans would apply to the prepetition period, *i.e.*, before December 11, 2012, and the payment of the prepetition, unsecured amount would therefore violate the distribution scheme of the Bankruptcy Code to the prejudice of other creditors.[2] The Court invited the Debtors and the UST to submit brief letter memoranda addressing *Hechinger*.

The Court is convinced, and is holding, that *Hechinger* is not controlling of the Motion because of important differences in facts. In *Hechinger*, just months before its Chapter 11 filing, the company adopted benefits plans to entice key employees to remain through liquidation. These were "Stay-on-Plans" as opposed to performance plans as is the case here. The benefits became payable only upon the closing of a store or when the employee's job was terminated. *Hechinger* filed for bankruptcy and closed stores. Affected employees sought payment of the benefits as administrative expenses pursuant to Section 503(b)(1)(a) on the ground that the payments were earned after the bankruptcy filing and their efforts benefitted the estate. The Delaware Bankruptcy Court apportioned

---

[2] The UST serves an extremely important and challenging function in bankruptcy cases. The Court is enormously grateful for and respectful of the UST's tirelesss work under pressing circumstances. Although the Court is offended when parties argue that the UST has no financial stake in a matter, in this case creditors are represented by an Official Creditors' Committee which is not objecting. In fact, no creditor has objected. The Court is therefore less moved by the UST's argument on behalf of creditors.

the benefits between pre-bankruptcy and the post-petition employment periods. The Bankruptcy Court gave administrative expense treatment only to the post-petition period.

The Delaware District Court and the United States Court of Appeals for the Third Circuit affirmed. The Third Circuit specifically ruled that: "Some of these services were rendered before the bankruptcy case was commenced and some were rendered after. Accordingly, it seems clear to us that some sort of apportionment between the two periods is needed." 298 F.3d at 225.

The differences between the situation in *Hechinger* and that present here are significant.

1. *Hechinger* involved retention plans and the Motion involves performance based incentive plans. Retention can be readily calculated on a day-by-day basis and thereby apportioned. Performance is determined at the end of a time period. It is not possible to attribute success to any particular day or days and the relevant time period is thus indivisible.

2. *Hechinger* decided a motion by non-debtor employees filed two months after the petition date. Here, it is Debtors who moved at the beginning of the case. Thus, the beneficiaries of the Plans have served and will continue to serve to benefit the Debtors.

3. The Doctrine of Necessity does justify the Plans. In a liquidating case such as this, the eligible employees' efforts are necessary to preserve the Debtors' businesses. *Hechinger* addressed Section 105(a) without addressing the Doctrine of Necessity. As Debtors point out, the Court permits payments to critical vendors when it benefits the bankruptcy estate. The same principle is at work here, namely, preservation of the estate.

<u>Conclusion</u>

For the foregoing reasons, the Court finds that the Plans are necessary and appropriate and consistent with the Bankruptcy Code. A separate order will issue.

Dated: March 15, 2013

*[signature: Kevin Gross]*

KEVIN GROSS, U.S.B.J.