IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :      Chapter 11
                                              :
ICL HOLDING COMPANY, INC., <u>et al.</u>,     :      Case No. 12-13319 (KG)
                                              :
                        Debtors. [1]          :      Jointly Administered
                                              :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 305(a), 349 AND 1112(b) AND FED. R. BANKR. P. 1017(a) (A) DISMISSING THE DEBTORS' CHAPTER 11 CASES AND (B) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by and through their undersigned counsel, submit this motion (the "<u>Motion</u>"), for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a), 305(a), 349 and 1112(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rule 1017(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (a) dismissing the Debtors' chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") and (b) granting related relief. In support of the Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: ICL Holding Company, Inc. (7662), Boise HCI, Inc. (2686), RC Services, L.L.C. (2279), ABC HCC, L.L.C. (2012), HICL Holdings, Inc. (3557), ICL Holdco, LLC (3233), ICL Intermediate Holdco, Inc. (7709), SACL Center, Inc. (N/A), CL Holding Company of Texas, LLC (9174), Holdings CL, Inc. (2090), HCLl at Tenaya, LLC (8443), ABC HCL, LLC (9674), HCL of Chester County, Inc. (6062), HCL of Dayton, Inc. (2086),  Fort Worth HCL, L.P. (5272), HCL of Mechanicsburg, LLC (5957), HCL of Milwaukee, Inc. (4291), HCL New Orleans, L.L.C. (4151), HCL of North Carolina, L.L.C. (1857), North Texas HCL, L.P. (2743), HCL of Northern Nevada, Inc. (0990), HCL of Pittsburgh, LLC (9672), ASHCL, LLC (6312), HCL of Sarasota, LLC (7045), HCL of South Texas, Inc. (5457), Investments of CL, L.L.C. (5041), CL Investments 2, LLC (4598), SMCL, L.L.C. (4309), CL REIT 1, Inc. (3708), CL REIT 2, Inc. (2075), HSCL of North Louisiana, LLC (2585), HSCN of Denver, Inc. (8584), HCN/Muskegon, Inc. (1802), Pittsburgh HS, LLC (6725) and HSAS, Ltd. (5386).

## PRELIMINARY STATEMENT[2]

Prior to the Petition Date, the Debtors faced unsustainable long-term debt obligations. Beginning in July 2012, the Debtors engaged with their existing secured lender group and certain holders of their senior subordinated notes to try to effect a consensual restructuring of their balance sheet. The Debtors presented an initial proposal to all parties for a restructuring pursuant to a chapter 11 plan. The Debtors' existing secured lender group (the "Prepetition Secured Lenders") would not consent to or finance a plan, but provided a counterproposal in the form of a term sheet for the sale of substantially all of the Debtors' assets. The Debtors recognized that, in the absence of the Prepetition Secured Lenders' consent, they could not confirm a chapter 11 plan of reorganization unless they were able to secure viable alternative financing that would pay the secured lenders' claims in full. The Debtors were unable to obtain such financing.

Accordingly, the Debtors commenced these Chapter 11 Cases to effectuate a sale process that would result in the continuation of their business as a going concern, maintain quality care for patients and preserve the jobs of approximately 4,500 employees. The sale process undertaken by the Debtors, which began prior to the Petition Date and continued during the Chapter 11 Cases, provided an opportunity for any interested bidders to formally bid for the Debtors' assets or to offer to fund a chapter 11 plan that would pay the Prepetition Secured Lenders in full. It was, in the Debtors' view, the best means to maximize the value of the Debtors' estates. However, if no higher or better offers were received, the Debtors acknowledged at the "first day" hearing that it would likely be necessary to convert or dismiss these Chapter 11 Cases.

---

[2]    Capitalized terms used but not yet defined in the Preliminary Statement are defined herein.

At the conclusion of the sale process, the highest bid was a credit bid from the Prepetition Secured Lenders for less than all of the outstanding debt owed to them. As a result of successfully closing this transaction, the Purchaser continues to operate the business as a going concern, patients continue to be cared for and employees continue to have jobs. However, as no cash bid sufficient to pay the Prepetition Secured Lenders in full was received, the Debtors are unable to confirm a chapter 11 plan. Although the Purchaser provided limited funds to be placed in escrows to satisfy certain specified wind down costs, the Debtors' estates have no remaining assets with which to satisfy the Prepetition Secured Lenders' remaining claims or any other secured, administrative or priority claims against the Debtors' estates. However, because certain processes related to the Chapter 11 Cases remain unresolved—including the Committee's claims resolution process and the United States' Appeals —the Debtors believe it would be inappropriate to seek to convert these Chapter 11 Cases to chapter 7.

Accordingly, the Debtors seek entry of an order dismissing the Chapter 11 Cases as the most efficient way to keep fees and expenses to a minimum without impairing the rights of third parties. The Debtors request that the dismissal of any Debtor's Chapter 11 Case be conditioned upon the Debtors' certification[3] to this Court that (a) the Committee has completed its claims reconciliation process with respect to such Debtor[4] and (b) all U.S. Trustee fees attributable to such Debtor have been paid in full. In addition to the requirements of the preceding sentence, the Debtors propose that the dismissal of the Chapter 11 Cases of ICL Holding Company, Inc. and Holdings CL, Inc. be conditioned upon the Debtors' certification to

---

[3]    The form of certification for all Debtors, except for ICL Holding Company, Inc. and Holdings CL, Inc., is attached as Exhibit B. The form of certification for ICL Holding Company, Inc. and Holdings CL, Inc. is attached as Exhibit C. The form of dismissal order applicable to all Debtors is attached hereto as Exhibit D.

[4]    Pursuant to the term sheet signed in accordance with the Committee Settlement, the Committee bears sole responsibility for the claims reconciliation process. [Docket No. 690, Exhibit A].

this Court that (c) no further action with respect to the Appeals is pending and that no party to

the Appeals is entitled to file any further petition or appeal with respect thereto, (d) the Escrows

have been closed in accordance with their terms and (e) the Court has entered orders with respect

to final fee applications. The Debtors further request that the Court enter an order approving

certain fully consensual releases to provide comfort to the released parties.

## JURISDICTION

1.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.       The statutory predicates for the relief sought herein are sections 105(a),

305(a), 349 and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017(a).

3.       Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the

entry of a final judgment or order with respect to this Motion if it is determined that this Court

would lack Article III jurisdiction to enter such final order or judgment absent the consent of the

parties.

## BACKGROUND

**A.       General Background**

4.       On December 11, 2012 (the "Petition Date"), the Debtors each

commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. On

December 13, 2012, the Court ordered that the Chapter 11 Cases be jointly administered for

procedural purposes. The factual background regarding the Debtors, including their business

operations, their capital and debt structure, and the events leading to the filing of the Chapter 11

Cases, is set forth in the Declaration of Phillip B. Douglas in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 13].

       5.      On December 20, 2012, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases pursuant to Bankruptcy Code section 1102. No trustee or examiner has been appointed in the Chapter 11 Cases.

**B.**    **The Main Sale**

       6.      On the Petition Date, the Debtors filed the *Debtors' Motion for Orders: (A)(I) Establishing Bidding Procedures Relating to the Sale of Substantially All of the Debtors' Assets; Approving Expense Reimbursement; (III) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (IV) Approving form and Manner of Notice of All Procedures, Protections, Schedules and Agreements and (V) Scheduling a Hearing to Consider the Proposed Sale and (B)(I) Approving the Sale of Substantially All of the Debtors' Assets; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Certain Related Relief* (the "Main Sale Motion") [Docket No. 23].

       7.      The Debtors, in conjunction with their advisors, conducted an extensive marketing process both prepetition and postpetition. During the prepetition marking process, the only bid for the Debtors' assets was a credit bid made by Hospital Acquisition LLC, an entity formed by the Debtors' Prepetition Secured Lenders (the "Purchaser"), for substantially all of the Debtors' assets other than assets associated with a hospital facility located in Boise, Idaho. During the postpetition marketing process, which was conducted in accordance with court-approved bidding procedures, the Debtors did not receive any other qualified bids. The

scheduled auction was cancelled, and the Purchaser was selected by default as the successful bidder.

8.      On April 4, 2013, the Court entered the order (the "Main Sale Order") authorizing the sale (the "Main Sale") of substantially all of the Debtors' assets to the Purchaser pursuant to an Asset Purchase Agreement by and between Purchaser, LCI Holdco LLC, LifeCare Holdings, Inc. and certain of its subsidiaries, dated December 10, 2012 (as amended from time to time, the "APA") [Docket No. 617]. The Main Sale excluded the Debtors' assets associated with Debtor Boise Intensive Care Hospital, Inc. (the "Boise Assets"), which were later sold to another party as described herein.

C.      **The Boise Sale**

9.      On March 27, 2013, the Debtors filed the *Debtors' Motion for Entry of Orders: (A)(I) Approving the Settlement Agreement with Health Care REIT, Inc., (II) Authorizing the Execution and Delivery of the Interim Facility Management Agreement, (III) Scheduling a Hearing to Consider the Proposed Boise Sale Transaction and (IV) Granting Certain Related Relief; and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Authorizing the Rejection of an Unexpired Lease of Nonresidential Real Property with Health Care REIT, Inc. and Allowing Rejection Damage Claims in Connection Therewith and (IV) Granting Certain Related Relief* (the "Boise Sale Motion") [Docket No. 574].

10.     On May 21, 2013, the Court entered the order (the "Boise Sale Order") authorizing the sale of the Boise Assets (the "Boise Sale" and, together with the Main Sale, the "Sales") to Vibra Hospital of Boise, LLC ("Vibra") [Docket No. 770].

**D.**     **The Escrows**

11.     Pursuant to the Main Sale Order and the Boise Sale Order, the Debtors sold substantially all of their assets, including all of their cash. Upon the closing of the Main Sale, the Purchaser funded three escrow accounts (the "Escrows") from its own funds to be used for the payment of specified pre-closing fees and expenses of the Debtors' and Committee's professionals and for payment of specified wind down expenses of the Debtors, including, among other things, post-closing fees of the Debtors' professionals, U.S. Trustee fees and certain property taxes. As such, the Debtors currently have no assets to administer and on-going administrative costs of the estates are being paid for by the Purchaser.

**E.**     **The Committee Settlement**

12.     On April 26, 2013, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for Order Approving Compromise of Controversy and Approving Term Sheet in Aid of Consummation of Court-Approved Sale of Assets* (the "Committee Settlement Motion") [Docket No. 690].

13.     The Committee Settlement Motion sought Court approval for a compromise between the Committee, the Prepetition Secured Lenders and the Purchaser whereby the Debtors' Prepetition Secured Lenders contributed funds (the "GUC Funds") from a carve out of their collateral to be available for distribution to unsecured creditors (the "Settlement Agreement").

14.     On May 28, 2013, the Bankruptcy Court approved the Settlement Agreement [Docket No. 794].

**F.**     **The Appeals**

15.     On April 17, 2013, the United States of America (the "Appellant") filed its Notice of Appeal with respect to the Main Sale Order (the "Sale Appeal") [Docket No. 660]. The

Appeal was docketed as Case No. 13-924 in the United States District Court for the District of

Delaware (the "District Court") on May 23, 2013.

16.    On June 7, 2013, the Appellant also appealed the approval of the

Settlement Agreement (the "Committee Settlement Appeal" and, together with the Sale Appeal,

the "Appeals") [Docket No. 838]. Among other things, the Appeals allege that the Escrows

created pursuant to the Main Sale Order and the APA, along with the GUC Funds, are property

of the Debtors' estates and should be distributed pro rata to creditors. The Appeals were

consolidated on June 24, 2013, and remain pending in the District Court.

**G.    The Bar Date**

17.    On September 13, 2013, the Court entered the *Order (1) Fixing Bar Date*

*for the Filing of Non-Priority Unsecured Proofs of Claim, (2) Fixing Bar Date for the Filing of*

*Non-Priority Unsecured Proofs of Claim by Governmental Units, (3) Authorizing Form and*

*Manner of Notice Thereof, and (4) Granting Related Relief* (the "Bar Date Order") [Docket No.

997]. Pursuant to the Bar Date Order, October 28, 2013 at 4:00 p.m. (prevailing Eastern time)

(the "General Bar Date") was the deadline for any person or entity, including governmental

units, holding a claim or interest against the Debtors that arose or was deemed to have arisen

prior to the Petition Date (excluding certain claims) to file proof of such claim or interest.

**RELIEF REQUESTED**

18.    By this Motion, the Debtors request entry of an order (i) approving the

dismissal of the Chapter 11 Cases, pursuant to section 1112(b) or, in the alternative, section

305(a) of the Bankruptcy Code, upon certification of counsel by the Debtors that as to each

Debtor, (a) the Committee has completed its claims reconciliation process with respect to such

Debtor and (b) all U.S. Trustee fees attributable to such Debtor have been paid in full. In addition

to the requirements of the preceding sentence, the Debtors propose that the dismissal of the Chapter 11 Cases of ICL Holding Company, Inc. and Holdings CL, Inc. be conditioned upon the Debtors' certification to this Court that (c) no further action with respect to the Appeals is pending and that no party to the Appeals is entitled to file any further petition or appeal with respect thereto, (d) the Escrows have been closed in accordance with their terms and (e) the Court has entered orders with respect to final fee applications. The Debtors also request entry of an order granting the related relief requested herein.

**BASIS FOR RELIEF**

**A.    Dismissal of the Chapter 11 Cases Is Warranted Under Section 1112(b) Of The Bankruptcy Code.**

19.    Pursuant to section 1112(b)(1) of the Bankruptcy Code, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1). "Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'" *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3d Cir. 2012). Dismissal is mandatory once a court has found that "cause" exists and that dismissal is in the best interests of a debtor's creditors and its estate. *See In re Riverbend Community, LLC*, No. 11-11771 (KG), 2012 WL 1030340, at *3 (Bankr. D. Del. Mar. 23, 2012) (court must dismiss if cause shown unless unusual circumstances exist); *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court *shall* dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.") (emphasis in original).

20.     The Court has "broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates." *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 340 (3d Cir. 2011). This authority includes the ability to grant a dismissal with conditions. *See In re Fleurantin*, 420 F. App'x 194, 197 (3d Cir. 2001) (bankruptcy court's finding that structured dismissal with conditions was in best interests of creditors was not abuse of discretion). As set forth herein, the Debtors have sold substantially all of their assets, cannot confirm a chapter 11 plan and no longer have assets to collect or administer. The continuation of the Chapter 11 Cases beyond the time necessary for the Committee to complete its claims reconciliation process (and, with respect to the Chapter 11 Cases of ICL Holding Company, Inc. and Holdings CL, Inc., the final resolution of the Appeals, the closure of the Escrows and orders having been entered on final fee applications) will have no demonstrable benefit for the Debtors' creditors or their estates. Therefore, the Court should dismiss the Chapter 11 Cases as set forth herein.

**(i)     Cause Exists to Dismiss the Chapter 11 Cases.**

21.     The decision regarding whether causes exists is determined on a case-by-case basis and is within the sound discretion of the bankruptcy court. *American Capital*, 688 F.3d at 161; *In re Myers, 491 F.3d 120, 127* (3d Cir. 2007); *see also Sullivan Central Plaza I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir. 1991); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984).

22.     The Debtors' inability to effectuate a plan of reorganization is sufficient to show cause for dismissal. *See American Capital*, 688 F.3d at fn. 10 (inability to effectuate a plan is a viable basis for dismissal); *see also DCNC North Carolina I, L.L.C. v. Wachovia Bank, N.A.*, Nos. 09–3775, 09–3776, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009). "Inability to effectuate a plan arises when the debtor lacks the capacity 'to formulate a plan or to carry one

out.'" *Small Business Administration v. Preferred Door Co., Inc. (In re Preferred Door Co., Inc.)*, 990 F.2d 547, 549 (10th Cir. 1993) (quoting *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989).

23.     Here, the Debtors have sold substantially all of their assets and are no longer conducting any business operations. As such, there is no business to reorganize and there are no assets to liquidate. Moreover, the Debtors do not have assets to satisfy any remaining administrative claims and, therefore, cannot obtain confirmation of a chapter 11 plan. Accordingly, the Debtors have shown that cause exists to dismiss the Chapter 11 Cases on the terms described herein pursuant to section 1112(b) of the Bankruptcy Code.

**(ii)     Dismissal is in the Best Interests of the Debtors' Creditors and Estates.**

24.     Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must evaluate whether dismissal or conversion is in the best interests of the debtor's creditors and of the estate. *See American Capital*, 688 F.3d at 161; *Rollex Corp. v. Associated Materials (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."). A court has significant discretion to determine whether dismissal or conversion is the more appropriate alternative. *American Capital*, 688 F.3d at 163. Here, dismissal is more appropriate for several reasons.

25.     Conversion to chapter 7 and appointment of a trustee is unnecessary and would impose significant additional administrative costs upon the Debtors' estates with no corresponding benefit. Even if the Debtors could pay the additional administrative costs associated with conversion, the Debtors have no remaining assets, including avoidance actions, that a chapter 7 trustee could utilize to generate funds for distribution or otherwise for the benefit of the Debtors' creditors or their estates. Accordingly, dismissal, and not conversion, is

appropriate under the Debtors' circumstances. *See Riverbend*, 2012 WL 1030340, at *4 (finding

dismissal proper where, among other things, debtor had no likelihood of rehabilitation and no

assets, operations or cash flow); *In re Midwest Properties of Shawano, LLC*, 442 B.R. 278, 286

(Bankr. D. Del. 2010) (finding dismissal proper where operations not sufficient to pay expenses

and trustee would add more costs); *3 Ram*, 343 B.R. at 118 (finding dismissal proper where no

estate for chapter 7 trustee to administer).

   26. Moreover, the Court may consider the expressed interests of creditors and

other parties in interest when determining whether dismissal or conversion is in the best interests

of creditors. *See In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 801 (E.D. Pa

2000) (bankruptcy court properly considered opinions of committee members and United States

Trustee when evaluating best interests of creditors); *In re Mazzocone*, 183 B.R. 402, 413-14

(Bankr. E.D. Pa. 1995) (preference of one creditor not dispositive of the best interests of

creditors, but global approach is appropriate). Here, the Purchaser and the Committee support the

Debtors' determination to seek dismissal of the Chapter 11 Cases. Dismissal of the Chapter 11

Cases as set forth herein is in the best interest of the Debtors' estates and their creditors under the

Debtors' unique circumstances.

   27. This Court has previously granted structured dismissals pursuant to

section 1112(b). *See, e.g.*, *In re G.I. Joe's Holding Corp.*, Case No. 09-10713 (KG) (Bankr. D.

Del. Mar. 10, 2011) [Docket No. 753]; *In re Distributed Energy Systems Corp.*, Case No. 08-

11101 (KG) (Bankr. D. Del. Sept. 24, 2010); *In re CFM U.S. Corp.*, Case No. 08-10668 (KJC)

(Bankr. D. Del. Feb. 1, 2010) [Docket No. 1282]; *In re Foamex Int'l Inc.*, Case No. 09-10560

(KJC) (Bankr. D. Del. Jan. 20, 2010) [Docket No. 761]; *In re Alternative Distribution Systems,

Inc.*, Case No. 09-13099 (PJW) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 213]; *In re KB Toys,*

*Inc.*, Case No. 08-13269 (KJC) (Bankr. D. Del. Dec. 1, 2009) [Docket No. 914]; *In re Wickes*

*Holdings, LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. May 11, 2009) [Docket No. 1418].[5]

**B.    Dismissal Of The Chapter 11 Cases Is Warranted Under Section 305(a) Of The Bankruptcy Code.**

28.    Alternatively, cause exists to dismiss the Chapter 11 Cases pursuant to

section 305(a) of the Bankruptcy Code, which provides that:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).

29.    Dismissal pursuant to section 305(a) is an extraordinary remedy, and

dismissal is only appropriate where the court finds that both creditors and the debtor would be

better served by dismissal. *In re AMC Investors, LLC*, 406 B.R. 478, 487-88 (Bankr. D. Del.

2009). Dismissal under this provision is determined on a case-by-case basis and rests in the

sound discretion of the bankruptcy court. *In re Sky Group Intern, Inc.*, 108 B.R. 86, 91 (Bankr.

W.D. Pa. 1989). Many factors are considered when determining the best interests of creditors

and the debtor, including (i) the economy and efficiency of administration, (ii) whether federal

proceedings are necessary to reach a just and equitable solution, (iii) whether there is an

alternative means of achieving an equitable distribution of assets and (iv) whether the debtor and

the creditors are able to work out a less expensive out-of-court arrangement which better serves

all interests in the case. *AMC Investors*, 406 B.R. at 488.

---

[5]    Because of the voluminous nature of the orders cited herein, they are not attached to the Motion.  Copies of these orders, however, are available on request.

30.    As described above, cause exists for dismissal. The Debtors have sold substantially all of their assets and are unable to confirm a plan. With no remaining assets to administer, conversion to chapter 7 would impose additional administrative costs with no corresponding benefit to the Debtors' creditors or their estates. Dismissal of the Chapter 11 Cases as set forth in this Motion provides the most efficient, cost-effective method of effectuating the wind down of the Debtors' estates, ensures payment of all U.S. Trustee fees and avoids any negative impact on the Committee's claims reconciliation process or the Appeals.

31.    This Court has previously granted structured dismissals pursuant to section 305(a). *See e.g.*, *In re Coach Am Group Holdings Corp.*, Case No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) (dismissing case pursuant to section 305(a)) [Docket No. 1568]; *In re TSIC, Inc. f/k/a Sharper Image Corporation*, Case No. 08-10322 (KG) (Bankr. D. Del. December 27, 2012) (dismissing case pursuant to sections 1112(b) and 305(a)) [Docket No. 2541].

## RELATED RELIEF

32.    The Debtors' officers and directors worked diligently to successfully sell the Debtors' business not knowing whether they would have a continued role in the business following any such sales. In doing so, thousands of jobs were preserved, patient care continued with no interruption at the highest standards, hundreds of vendors and suppliers maintained customers with which to do business and communities were afforded the continued operations of hospitals that treat difficult cases. Moreover, the directors and officers achieved a successful sale of the Boise Assets after they were excluded from the Main Sale and, absent finding an alternative purchaser, it was nearly certain that the facility would be wound down. In consideration of that work, the Prepetition Secured Lenders, the lenders under the DIP credit

14

agreement, the Committee, the Purchaser and Vibra (each in their respective capacities as such) (collectively, the "Releasing Parties") have agreed to fully consensual releases to be documented in each Debtor's dismissal order as reflected in Exhibit D. Specifically, the Releasing Parties have agreed to release the Debtors, the Prepetition Secured Lenders, the lenders under the DIP credit agreement, the Committee, the Purchaser and Vibra, and their respective present or former officers, directors, employees, members, attorneys, consultants, advisors and agents (the "Released Parties") from any and all claims of whatever kind or nature of the Releasing Parties arising from or related in any way to the Debtors or their Chapter 11 Cases, such that the Releasing Parties are barred from pursuing any remedies that they have with respect to such claims against any Released Party; provided, however, that (i) any deficiency claim of the Prepetition Secured Lenders shall not be released and shall be governed by the Committee Settlement, (ii) professional fee claims shall be preserved and (iii) any claim (whether known or unknown) of the Purchaser arising from or related to the APA or the Main Sale Order, other than claims constituting Acquired Assets under the APA, shall be preserved.

    33. Courts have generally approved of consensual releases of third parties in a plan. *See Matter of Specialty Equipment Companies, Inc.*, 3 F.3d 1043, 1047 (7th Cir. 1993) ("[C]ourts have found releases that are consensual and non-coercive to be in accord with the strictures of the Bankruptcy Code."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) (release of third parties permitted when creditors vote in favor of plan that contains such a release); *In re Arrowmill Development Corp.*, 211 B.R. 497, 506 (Bankr. D.N.J. 1997) ("When a release of liability of a nondebtor is a consensual provision, however, agreed to by the effected creditor, it is no different from any other settlement or contract and does not implicate 11 U.S.C. § 524(e).").

34.     Third party releases have also been approved in a structured dismissal. *See In re Coach Am Group Holdings Corp.*, Case No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) (approving structured dismissal including releases).

35.     Finally, the Debtors request that, notwithstanding section 349 of the Bankruptcy Code, all prior orders of this Court entered in the Chapter 11 Cases shall remain in full force and effect and shall survive the dismissal of the Chapter 11 Cases. Such relief has been granted under similar circumstances as set forth in paragraph 27.

## NOTICE

36.     Notice of this Motion has been given to (i) the U.S. Trustee; (ii) counsel to the Prepetition Secured Lenders and the Purchaser; (iii) counsel to Vibra; (iv) counsel to the Committee; (v) all creditors of the Debtors; and (vi) all parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
      December 24, 2013

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Kristhy M. Peguero*
Anthony W. Clark (I.D. No. 2051)
Kristhy M. Peguero (I.D. No. 4903)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

Kenneth S. Ziman
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

- and -

Felicia Gerber Perlman
Matthew N. Kriegel
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

Counsel for Debtors and Debtors in Possession