IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| LCI HOLDING COMPANY, INC., et al., | ) Bk. No. 12-13319 (KG) |
| | ) |
| | ) |
| | ) |
| Debtors. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Civ. No. 13-924-SLR |
| | ) Civ. No. 13-1188-SLR |
| LCI HOLDING COMPANY, INC., et al., | ) |
| | ) |
| Appellees. | ) |

**MEMORANDUM**

At Wilmington this 10th day of March, 2014, having reviewed the materials submitted in connection with appellant's appeal and motion to stay, the court concludes that said motions[1] are denied and the appeals[2] are dismissed, for the reasons that follow:

1. **Background.** On December 11, 2012 (the "petition date"), LCI Holding Company, Inc. and certain of its subsidiaries, including LifeCare Holdings, Inc. (collectively the "debtors"), filed petitions for relief under chapter 11 of the Bankruptcy

---

[1] D.I. 2 & 13 in lead case, *In re: LCI Holding Company, Inc.*, Civ. No. 13-924-SLR (D. Del. filed May 23, 2013).

[2] D.I. 1 in lead case. D.I. 1 in member case, *In re: LCI Holding Company, Inc.*, Civ. No. 13-1188-SLR (D. Del. filed July 5, 2013).

Code in the United States Bankruptcy Court for the District of Delaware (the "bankruptcy court"). (D.I. 22 JA0001-0003) The request for joint administration of the cases was granted. *In re LCI Holding Company, Inc.*, Case No. 12-13319-KG. (*Id.* at JA0003)

2. On the petition date, the debtors filed a motion seeking, among other things, to sell substantially all of their assets.[3] (*Id.* at JA0001) The debtors and their advisors conducted an extensive marketing process beginning in June 2012. (*Id.* at JA0004-5) However, during the prepetition marketing process, the only bid received for debtors' assets was a credit bit made by Hospital Acquisition LLC (the "purchaser"). (*Id.* at JA0006) Thereafter, the postpetition marketing process was conducted consistent with the bankruptcy court's approved bidding procedures. (*Id.* at JA0376-0377) The debtors did not receive any other bids. The scheduled auction was cancelled and the purchaser was selected by default as the successful bidder. (*Id.* at JA0372)

3. On April 4, 2013, the bankruptcy court held a hearing to consider, among other things, the debtors' sale motion. (*Id.* at JA0416) Appellant United States, on behalf of the Internal Revenue Service, filed opposition and argued against sale at the hearing. Appellant's objection to the sale was "that no provision was made for the payment of any part of the substantial tax liability that [would] accrue as a result of this sale, despite the fact that provisions [were] made for payment of other claims, both other administrative claims that would be junior, including those of unsecured creditors."

---

[3]"The debtors' prepetition restructuring efforts, including attempts to reach terms of a consensual plan of reorganization with the prepetition lenders, exhausted all possibilities to reduce the company's over-leveraged capital structure and maximize value." (*Id.* at JA0378)

(*Id.* at JA0438 - 0439) Moreover, appellant asserted that the provisions of the proposed sale conflicted with the provisions of 11 U.S.C. § 1129. (*Id.* at JA0439) Appellant requested that, if the sale were approved, the court order the pro rata distribution of administrative claims.

4. At the close of the hearing, the bankruptcy court overruled appellant's objections and entered the order authorizing the sale (the "sale order") of debtors' assets, including all of the debtors' cash, to the purchaser pursuant to an Asset Purchase Agreement, dated December 10, 2013 (the "APA"). (*Id.* at JA0518) In so doing, the bankruptcy court concluded:

> The fact of the matter is that I have to analyze this under Section 363 today, that we're not here on a confirmation of a plan. We're here on a sale of all of substantially all of the assets. It is not unfamiliar to this court that a case proceed this way.
> Your situation is unusual., but looking at this motion, I do see a sound business purpose. Not just the continuation of these businesses as a going concern, not just the importance of it to the patients and to the communities in which these hospitals exist and do business, but there is an assumption of operating liabilities. There are a number of sound business purposes. And as far as the other tests that we analyze in a sale it has clearly been proposed in good faith. There is no motion to dismiss or convert these cases. And I think that it is in the - certainly in the best interests of debtors' estate that the court approve the sale, and I'm going to approve the sale, and what will happen in your case to your claim- there may be some remedies that you will be able to perceive in the coming days that I don't want to be suggesting, but you will be, at some point, a claimant, and can pursue your remedies as such.

(*Id.* at JA0466-0467)

5. On April 17, 2013, appellant appealed the sale order entered on April 4, 2013.[4] (*Id.* at JA0643) On April 22, 2013, appellant filed a motion for a stay of the sale order to the "extent necessary to continue to stay disbursement of the escrowed funds set forth in the APA, and, if the proposed settlement with the unsecured creditors [were] approved, to add those settlement funds to the escrow."[5] (*Id.* at JA0650)

6. On May 28, 2013, the bankruptcy court held a hearing to consider, among other matters, appellant's objections to the sale order and the terms of the settlement. (*Id.* at JA069) The bankruptcy court rejected appellant's arguments, finding that the settlement proceeds were not property of the debtors' estate. (*Id.* at JA0765) Although the court granted the motion to approve settlement, the parties agreed that the funds (sought by appellant) would be held in trust until the hearing on the stay motion.[6] (*Id.* at JA0768) Appellant filed an appeal of this second bankruptcy court's order.[7]

7. On June 11, 2013, the bankruptcy court held a hearing on appellant's motion to stay, which was opposed. (*Id.* at JA0785) Appellant asserted that if the appeals were successful then it would be entitled to a portion of its administrative claim. (*Id.* at

---

[4]*In re: LCI Holding Company, Inc.*, Civ. No. 13-924-SLR (D. Del. filed May 23, 2013) (D.I. 1).

[5]Although initially requesting to stay the sale, at the June 11, 2012 hearing, appellant limited the requested relief to a stay of disbursements from the escrows. (*Id.* at JA0791)

[6] On May 31, 2013, the sale closed.

[7]*In re: LCI Holding Company, Inc.*, Civ. No. 13-1188-SLR (D. Del. filed July 5, 2013) (D.I. 1). Appellant's motion to consolidate the two cases was granted on July 24, 2013. (*Id.* at 5)

JA0792) Following extensive argument, the court concluded that appellant failed to satisfy the requirements for a stay. More specifically:

> Well, I think the issue again turns on - it begins and it ends with the court's determination that these funds are not property of the estate, and there's been no proof to the contrary [as was pointed out] that we had oversecured creditors who, therefore, weren't entitled to all of the funds that they received with the estate for distribution in accordance with - the bankruptcy code. That is not the case we have here. This was a contract, and the funds belong to the purchasers not to the debtor's estate. And as a consequence, the first and probably most important factor that a court must weigh in determining whether or not to grant a stay has not been - not been met by appellant. And I could go through the other tests but I think that ultimately that is the primary issue before this court and will be before, I suppose, the appellate court. And the court finds that there is really no record here on which to - for me to base a finding that the funds being held, in effect, in trust for other creditors, for other parties and specifically pursuant to a contract, that those are not property of the estate and I find and, therefore, I will deny the stay.

(*Id.* at JA0819)

8. On July 1, 2013, appellant filed a motion to stay (D.I. 13) in this court, to which opposition (D.I. 15, 16, 17, 21, 23, 25) and a reply (D.I. 26) have been filed.

9. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of

those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

10. A party moving for a stay pending appeal has the burden of showing the following four factors: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir.1991) (citing *Hilton v. Braunskill*, 481 U.S. 770 (1987); *see also In re Freedom Communications Holdings, Inc.*, Civ. No. 09–825, 2009 WL 4506553 (D.Del. Dec. 4, 2009) at *1; *In re Genesis Health Ventures*, Inc., 367 B.R. 516, 520 (Bankr.D.Del.2007). No single factor should be considered in isolation; rather, the court must balance and weigh all relevant factors. *See In re Calabria*, 407 B.R. 671, 678 (Bankr. W.D. Pa.2009) ("[F]ailure to satisfy any one of the four factors ... might not necessarily be fatal to a motion for stay pending appeal. Rather, to determine whether a stay pending appeal is warranted, the court is to balance each of the factors at issue and examine individualized considerations relevant to the case.").

11. Having considered the parties' submissions against the record at bar, the court concludes that the controlling issue with respect to the appeal is whether the bankruptcy court correctly found that the funds at issue were not part of debtors' estate. From a voluminous and uncontested record supplemented by the argument and testimony presented at several hearings, the bankruptcy court determined that the sale was warranted and the funds at issue belonged to the purchaser not the estate. At no time did appellant present any factual evidence to refute this finding. The court finds no error in the bankruptcy court's application of the law to the facts of record. *See In re TSIC, Inc.*, 393 B.R. 71, 77 (Bankr. D. Del. 2008).

12. Similarly, in light of this conclusion, the court finds that appellant has not demonstrated the first element required for a stay, likelihood of success on the merits. With respect to irreparable harm, appellant contends that a stay is needed to prevent the disbursement of funds because "seeking disgorgement after the fact could be potentially so complicated as inequitable, or even useless." (D.I. 14 at 19) Although appellant contends that these funds are in jeopardy, there is disagreement as to whether there would actually be any funds were the sale to be voided. (*See* D.I. 17 at 14-16) The court finds this issue too speculative to weigh in appellant's favor.

13. Regarding the third element, appellant argues that "neither debtors, purchasers nor unsecured creditors will face substantial injury if the court enters the stay." (D.I. 23 at 19) In response, the parties advise that harm and/or insolvency will result while awaiting an indeterminable period of time to resolve the appeal. (*See e.g.*, D.I. 17, 16) The potential injuries are more than mere inconvenience that would result by delayed payment.

14. Finally, appellant states that the public interest is served by a stay because the principles of the bankruptcy code would be protected. While a commendable purpose, the court finds that the public interest is better served by allowing the estates to be administered swiftly and efficiently and with the sale remaining in effect by the continuation of jobs, patient care and hospital services.

15. **Conclusion.** Appellant has failed to demonstrate that the bankruptcy judge erred in his April 4 and May 28, 2013 orders, either in his findings of fact or in applying those facts to the law. Further, appellant has not established that a stay pending appeal is warranted. An order shall issue.

_____
United States District Judge